**EXPLOSIVE SALES CO et v
HARTFORD ACCIDENT & INDEM CO et**

Ohio Appeals, 7th Dist, Mahoning Co

No 2110.   Decided July 12, 1935

Harrington, Huxley & Smith, Youngstown, for plaintiffs.

Henderson, Wilson, Mason & Wyatt, Youngstown, for defendants.

Company was compelled to pay, in behalf of the Jones Construction Company, a large amount of money in connection with certain defalcations of the Jones Construction Company in the construction of improvements in the state of Pennsylvania, and it is apparent from the record that the assignment made by the Jones Construction Company to the Hartford Accident and Indemnity Company was to indemnify it for the money thus paid out on behalf of the Jones Construction Company. So it appears that the assignment was for a valuable consideration, although for the purpose of securing a pre-existing obligation. We could scarcely hold that this assignment was in bad faith or without consideration.

This assignment by the Jones Construction Company to the Hartford Accident and Indemnity Company bears date of December 1st, 1931. Consent of the district, which was a conditional one, is as follows:

"Now, therefore, be it resolved by the Board of Directors of the Mahoning Valley Sanitary District that this board hereby consents to said assignment of the Jones Construction Company to the Hartford Accident and Indemnity Company, provided, however, that this consent shall be without prejudice to the interest of the district and to claims heretofore filed and shall not operate to release moneys heretofore retained by the district under the provisions of said contract No. 13, and provided that said moneys shall be continued to be retained in accordance with the terms and provisions of said contract No. 13 and provided that this consent shall apply only to the assignment of such funds as may be due or to become due to the Jones Construction Company after settlement of all such claims and damages for which moneys have heretofore been retained by the District."

This consent bears date of April 11th, 1932. The Maryland Casualty Company also consented to the assignment in the following terms:

"The Maryland Casualty Company, surety on the bond of the Jones Construction Company, consented to the assignment with the understanding that before the Mahoning Valley Sanitary District released any money to the Hartford Accident and Indemnity Company by virtue of the assignment, that they first determine that all claims against this contract have been settled in full."

## OPINION

By CARTER, J.

First, as to the claim of the Hartford Accident and Indemnity Company, under the assignment from the Jones Construction Company, there is a stipulation to the effect that the Hartford Accident and Indemnity

So it is clear that the Hartford Accident and Indemnity Company accepted this assignment with knowledge of these conditions and subject to the conditions stipulated in these consents.

The Stambaugh Thompson Company obtained a judgment against the Jones Construction Company in the amount of $1118.70, and proceeded, by a proceeding in aid of execution, to fasten a lien upon the money in the hands of the Mahoning Valley Sanitary District belonging to the Jones Construction Company. This lien, by this proceeding in aid of execution, bears date of May 15th, 1933. The Explosive Sales Company and The Stambaugh Thompson Company filed their claims with the District but did not rely on such but relied solely on the lien established by the proceeding in aid of execution.

The Refiners Oil Company filed a claim with the District on June 3, 1930, in the sum of $1282.66. The Hercules Powder Company filed its claim with the District in the sum of $3938.90 on November 3rd, 1930. Each of these claims, to-wit, the Refiners Oil Company and the Hercules Powder Company were filed prior to the assignment by the Jones Construction Company to the Hartford Accident and Indemnity Company.

Some reference is made in the brief of counsel for the Jones Construction Company and the Hartford Accident and Indemnity Company that some of these claimants dealt solely, exclusively and directly with the sub-contractor, B. F. Jones, Inc., and that any claim or claims of such are confined to that portion of the fund, if any, which is due from the owner or contractor to B. F. Jones, Inc.

After a perusal of all the facts as disclosed in this record, we are satisfied that whether these sales were made to B. F. Jones or B. F. Jones, Inc., that B. F. Jones or B. F. Jones, Inc., were acting at the time as agent or representative of the Jones Construction Company, and that the act or acts and conduct of B. F. Jones or B. F. Jones, Inc., in purchasing these materials for the purpose of carrying on the work in question were the acts and conduct of the Jones Construction Company, the principal contractor, and we so hold.

Article 13, of contract No. 13, provides:

"The contractor shall keep the work under his personal control, and shall not assign, transfer, convey, sub-let or otherwise dispose of this contract or his right, title or interest in or to the same, or any part thereof, without the previous consent, in writing, of the board, and he shall not assign by power of attorney, or otherwise, any of the moneys to become due and payable under this contract unless by and with the like consent of the board, provided that nothing herein contained shall be construed to hinder, prevent or affect an assignment by the contractor for the benefit of his creditors made pursuant to the statutes of the state of Ohio."

Article 22 of the same contract provides, in part:

"That the contractor shall assume the defense of and indemnify and save harmless the district and the board, and each member of the board, and its officers and agents, from all claims relating to labor or materials furnished for the work, to injuries to any person or corporation received or sustained by any act of the contractor or his employes in doing the work of in consequence of any improper materials, implements or labor used therein."

Article 23 of the same contract provides:

"The district may keep any moneys which would otherwise be payable at any time hereunder, and apply the same, or so much as may be necessary therefore to the payment of any expenses, losses or damages incurred by the district and determined as herein provided, and may retain until all claims are settled so much of the moneys as the board shall be of the opinion will be required to settle all claims of the nature specified in Article 22 against the district, and the board and its officers and agents, and all claims for labor or materials for the work, notice of which, signed and sworn to by the claimants, shall have been filed in the office of the board. The board may also, with the written consent of the contractor, use any moneys retained due or to become due under this contract, for the purpose of paying for labor or materials for the work."

This assignment was made and accepted on these conditions. The assignee took no greater rights than had the assignor. See 103 Oh St, 328.

Now, as to the claim of the Explosive Sales Company, what is its standing with relation to the assignment to the Hartford Accident and Indemnity Company? The Explosive Sales Company secured a judgment against the Jones Construction Company, and proceeded to fix a lien on the funds in the hands of the Mahoning Valley

488

Sanitary District belonging to the Jones Construction Company, by proceedings in aid of execution, and a lien was perfected by such proceedings on or about May 15th, 1933. The material sold to the contractor was explosives, and it is contended by the other claimants to the fund that such was not a lienable item. We have spent some time in the examination of authorities bearing on this question, and we are satisfied, and so hold, that explosives such as were sold and used under this particular contract are materials furnished for the work as provided in contract No. 13. This being true, then the assignment was subject to this item under the provisions of Articles 13, 22 and 23 of contract No. 13.

Our statute defines material men and is found in §8323-9 GC and is as follows:

"Material men, as used herein, shall be construed to include all persons by whom any machinery, materials or fuel are furnished in or for any construction, erection, alteration, repair or removal hereinbefore mentioned."

It will be observed that one is a material man who not only furnishes material in the construction, erection, alteration, repair or removal hereinbefore mentioned, but also for any construction, erection, alteration, repair or removal.

In DeWitt's Ohio Mechanic's Liens, §84, the author uses the following language:

"It is now very generally held that dynamite and other explosives used for the purpose of preparing the way for excavation or for other purposes incidental to getting the site ready for the erection or construction of the actual improvement or structure, are materials for which a lien may be acquired. The argument that dynamite is not a material but a part of the contractor's plant, which, like picks and shovels or mechanical appliances are used in the performance of work but are not considered materials furnished within the purview of the statute seems to us inherently unsound. A steam shovel, and engine and boiler, picks, shovels, crowbars and the like, are tools and appliances which while used in the doing of the work, survive its performance and remain the property of their owner. Not so, however, with materials that are used up in the performance of the work and are thereafter invisible except as they survive intangible results. They enter into and form a part of the permanent structure."

The author cites a number of authorities in harmony with the above.

In Jones on Liens, 3 Ed., page 1347A, this author uses the following language and cites numerous authorities:

"Powder used in the construction of a railroad falls within the designation of materials furnished under a lien law. The powder is not only used in the construction of the road but it is necessarily consumed and is so intended. It is furnished to be used in the construction of the road."

In 18 R.C.L., page 919, paragraph 49, the author uses the following language:

"In the early history of application of mechanic's lien laws the courts seem consistently to have denied liens for materials which though employed or consumed in the work, were not delivered for or became a part of the structure. The modern tendency, however, is to recognize the right to a lien for furnishing materials employed in temporary processes, especially if in such processes such material has been entirely or completely consumed or destroyed. Such right has also been recognized in the case of material so used and partly destroyed and materials used for temporary processes have been held to be lienable to the extent that their value is depreciated by use. Thus, while there is authority to the contrary, it seems to be the present prevailing view that a lien should be allowed for lumber furnished for and used in making forms for a concrete structure, and also for the timber, lumber and iron furnished for the construction of a cofferdam to make possible the construction of a permanent dam."

The author cites many authorities to this effect. See also Words and Phrases, Second Series, page 327, under the subject matters dealing with "Explosives," in which many authorities are cited, to the effect that explosives are materials under mechanic's lien laws.

We are aware of some authorities in this state to the contrary, with which we do not concur, and we are also aware of House Bill No. 119, which becomes effective some time during the month of July, dealing with explosives as being lienable items. However, this is not conclusive as to whether such are lienable items under the mechanic's lien law of this state. We therefore hold that the claim of the Explosive Sales Company is prior in right to that of the Hartford Accident and Indemnity Company under its assignment, that these explosives were materials included in contract No. 13.

Now, what are the respective priorities of

the Hartford Accident and Indemnity Company, the Refiners Oil Company, the Hercules Powder Company, the Stambaugh Thompson Company and the Explosive Sales Company? First we hold that under all the facts and law applicable in this case that the Hartford Accident and Indemnity Company took its assignment subject to the rights of the Refiners Oil Company, the Hercules Powder Company, the Explosive Sales Company. As to the Stambaugh-Thompson Company's claim, such we hold is not material as contemplated by contract No. 13, nor is it a lienable item under the mechanic's lien law of the state. The articles sold were tools that survived the work and not material furnished in or for the work; that the assignment to the Hartford Accident and Indemnity ·Company was subject to the claims of the Refiners Oil Company, the Explosive Sales Company, the Hercules Powder Company, as these were materials used in and for the work in· question.

Now, as to the Refiners Oil Company's claim, the contract of sale and sale of the gasoline and oil in question was made subsequent to the effective date of §8324-1 GC. It is true that contract No. 13 had been entered into long prior to the effective date of §8324-1 GC, and we have examined the authorities cited by counsel bearing on the question of impairment of the obligation of contracts and also many other cases. This company complied with the statute relative to fixing a lien on this fund under the attested account law of this state. The entire sale was made subsequent to the enactment of §8324-1 GC, under the lien laws of this state that were in effect at the time this contract and sale was made. We hold the Refiners Oil Company secured a lien upon this fund prior to the Hartford Accident and Indemnity Company. We have examined with care the cases cited by counsel bearing on the question of such a law impairing the obligation of contracts, and we are not satisfied that such is the case.

The case of Steuerwald et v Munn et, Court of Chancery of New Jersey, July 31, 1919, is a case somewhat similar to the one at bar. In that particular case the subcontractor had sold materials under a contract entered into prior to the enactment of a statute making such material a lien. The court in that case held that the materials sold prior to the effective date of the amendment, which gave a lien to the material man, could not be treated as a lien under the amendment, but sales made subsequent thereto were lienable and ordered same paid out of the fund.

The Supreme Court of this state in the case of Lockland Lumber Company v Robinson, 116 Oh St, 725, on page 726, uses the following language:

"Statutes providing for mechanic's liens do not create any new substantive right, but are remedial in character, providing an additional means of enforcing payment of the debt."

We might suggest that we consider it among the probabilities that oil and gas actually consumed in and for the improvement in question, as furnished by the Refiners Oil Company, might be a lienable item, regardless of §8324-1 GC. However, we deem it unnecessary to make such a holding in view of the conclusions that we have already reached ·in connection with this claim.

Now, as to the Hercules Powder Company, this claim, by reason of the observations heretofore made in this opinion, is prior to the assignment of the Hartford Accident and Indemnity Company, as such were materials under that contract. What is its priority, if any, as against the Refiners Oil Company. the Explosive Sales Company and the Stambaugh-Thompson Company?

If the items furnished by the Refiners Oil Company and the Hercules Powder Company were materials and were used in the same job, and it appears that they were. then there would be no priority as between these claims, provided compliance had been had with the lien statutes. We have already held that the Refiners Oil Company has complied with the statutes of the state in fixing a lien under the attested account law. Did the Hercules Powder Company comply with these statutes so as to give it a lien on this fund? We hold that these explosives sold by the company and used on the particular job were materials furnished under the mechanic's lien law of the state.

It appears that on the 3rd day of December, 1930, it duly served an affidavit and verified proof of said claim on the Mahoning Valley Sanitary District, the Maryland Casualty Company, the B. F. Jones, Inc., and the Jones Construction Company. Now, it is claimed that this claimant did not file its claim within four months after furnishing the material, as provided in §8324 GC, and .it is conceded that this is true, but it is the claim of the Hercules Powder Company that it is saved by reason of the provisions of §8325 et seq, GC. §8325 GC provides:

"Upon receiving the notice required by the next preceding section, such owner, board or officer or public authority, or authorized clerk, agent or attorney, thereof, shall detain in his hands all subsequent payments from the principal or sub-contractor to secure such claims and the claims and estimates of other sub-contractor, material men, laborers, mechanics or persons furnishing materials to or performing labor for any contractor or sub-contractor who intervenes before the next subsequent payment under the contract or within ten days thereafter."

This section provides that other material men who intervened before the next subsequent payment under the contract, or within ten days thereafter, are entitled to a lien. Under the provisions of contract No. 13, the contractor was not entitled to his money until labor and materials were cared for, so in fact this claim was filed before the next subsequent payment became due to the contractor under the contract. The money is still being held under the terms of the contract for distribution.

Sec 8326, GC, in substance, provides, that unless the sub-contractor, material man, mechanic or laborer filed a copy of the statement filed with the board, with the county recorder, he shall have no priority over other claimants.

Sec 8328, GC, provides:

"All other subcontractors, material men, laborers, mechanics or persons furnishing material for or machinery, who before the first subsequent payment falls due after a deposit of a copy of such statement with the county recorder by a subcontractor, material or machinery man, laborer or person furnishing material, or within ten days thereafter file with such owner, board, officer or authorized clerk, agent or attorney thereof, a sworn and itemized statement or estimate of the labor, machinery, fuel or material furnished or to be furnished by them under a contract with a principal or subcontractor, containing a description of any promissory note or notes given therefore, or any part thereof, shall be paid pro rata with the person first so filing such statement and with each other out of such first and other subsequent payments so falling due. Upon failure so to do, they shall have no recourse against the owner, board, officer or clerk or agent thereof for any prior payments made under his contract with his head contractor or subcontractor."

In other words, if a material man filed a sworn itemized statement with the board of the material furnished before the first subsequent payment falls due after the deposit of a copy of such statement with the county recorder by any subcontractor, material man, etc., such shall be paid pro rata with the person so filing such statement, and with each other, out of such first and other subsequent payments so falling due. Therefore, under the contract, the first subsequent payment has not yet fallen due. We hold that the materials furnished by the Hercules Powder Company were materials under the provisions of the mechanic's lien law of Ohio, and that under contract No. 13, and the facts of this case, its claim was filed pursuant to §§8325 to 8328 GC, and it is entitled to participate in the fund and has a priority over the Hartford Accident and Indemnity Company, the Explosive Sales Company and the Stambaugh-Thompson Company.

The case of the Hercules Powder Company is here on error. The court below refused it a lien upon these funds. Under the provisions of Article — §— of the Constitution of Ohio, and also the laws of this state, this court may modify judgment of the lower court. In pursuance thereto, we hereby modify the judgment below in the following manner: That the Hercules Powder Company is entitled to a lien on the funds in question prior to the Hartford Accident and Indemnity Company, the Explosive Sales Company and the Stambaugh-Thompson Company.

Now, as to the Explosive Sales Company, under the authority above cited, the materials this company sold to the contractor were materials as contemplated by contract No. 13, and also under the mechanic's lien law of the state. However, the company did not rely on such, but relied solely on the lien created by the proceeding in aid of execution. Its lien was subsequent to the Refiners Oil Company and Hercules Powder Company claims and this claimant has the next best lien. The Stambaugh-Thompson Company proceeded in the same way, as did the Explosive Sales Company, and established a lien of the same date as did the Explosive Sales Company by proceedings in aid of execution. Inasmuch as the funds in the hands of the Mahoning Valley Sanitary District have already been consumed by the priorities herein fixed, it is probably unnecessary to determine whether the Stambaugh-Thompson Company or the Hartford Accident and Indemnity Company have priorities one over the other. However, as to priorities between the Hartford

Accident and Indemnity Company and the Stambaugh Thompson Company, we are of the opinion that the claim of the Hartford Accident and Indemnity Company is prior in right to that of the Stambaugh Thompson Company, as the materials sold by the Stambaugh Thompson Company were not such materials as contemplated in contract No. 13 or as materials under the mechanics' lien law.

Priorities fixed as follows: Refiners Oil Company and Hercules Powder Company have the first and best liens; Explosive Sales Company, the second best lien; Hartford Accident and Indemnity Company, the third best lien, and the Stambaugh Thompson Company the fourth best lien. Decree accordingly.

ROBERTS and NICHOLS, JJ, concur.